May it please the Court, Your Honorable Justices, what is clear, the law of the circuit is very clear that mental impairment is an extraordinary circumstance to warrant the tolling of the statute of limitations. What is at issue in this, in the matter that the petitioner brings before this court is what's not clearly set forth in this circuit, is the process a district court needs to use to determine if a petitioner is mentally impaired. The proposal that is being made here and the issue raised in the petitioner's briefs is to ask this court to establish a process that is based upon an extension of established precedent in the circuit and established reliable procedures used in the district court to determine mental competency of a criminal defendant before trial. What's clearly established also in this circuit is that mental competency is the equivalent of mental impairment. And that is set forth in the Calderon-Kelly case where this court affirmed the district court use of mental competency to show mental impairment. It was also used by the District Court of Oregon in Laws v. Lamarckay. We're asking that this court, this established procedure that's set forth in precedent that is the equivalent of mental impairment. So, question. Counsel, if mental competence is the same as mental impairment, so you're talking about the kinds of judgments the district courts have to make about competence to stand trial? It's, if they're mentally competent to stand trial. The question, the procedures that we're asking this court to rely upon are set forth in 18 U.S.C. 40241. So there are questions about mental competency at the time that somebody commits a crime, because you may have an insanity defense, which is different from the question of mental competence at the time of trial, which is a right to be able to aid in your own defense. So what is it that you're talking about? It's the latter, Your Honor. We're asking that the standard that is set forth is the competence to assist in trial. And understand the legal process as they're going through it. But that wouldn't really help your client if we made a judgment that your client was mentally competent to assist his counsel in his habeas proceeding, because you're actually looking backwards to a different time. That's not the relevant time here. The judgment about his mental competence to stand trial or to come before the district court is not the same as the mental competence at the time that he had the one-year period, the window in which he could file his habeas claim. I think the issues are similar, Your Honor, because the understanding They may well be related. But it's not identical, because you're actually looking for a particular place in time, not the present. That's correct. I'm not saying — I don't think the issue before this Court is whether Mr. Salcedo is competent to work with me or previous habeas counsel. I think the issue is when he was during the appellate process and after the appellate process for that one-year period, was he competent to understand the legal rights in order to actually meet the deadline. And you're going to base this right on what? You're going to base the right to have to use the resources of the State to provide mental experts to determine his mental capacity during a past period, and we're going to tie it to the statute? We're going to tie it to the Fifth Amendment, the Sixth Amendment? The right of the court — I mean, the right to have the appointment of experts? Is that the Court's inquiry? Yes, because that's what it's going to require. This is different from a right to counsel. Well, as a set forth and clearly established precedent in the United States Supreme Court, this circuit and the Seventh Circuit, that development of new facts at the habeas level is allowed. It's allowed. Now the question is, is the State obligated to pay for your mental experts? We have no case in which that has been established in this circuit. We have often recognized the evidence that Petitioners come forward with. But your client was given multiple opportunities to come forward with some kind of medical evidence, something, and failed to come forward with almost anything other than a declaration from his attorney and a letter from his sister. Petitioner is indigent, Your Honor, and he does not have the resources in which to hire the expert, the mental expert. And I understand that, and I'm sympathetic. Now the question is, what is his right grounded in? We're going to be extending our law if we adopt your proposal, and you were very frank about that. You were very candid with the Court, and I appreciate that. This is an extension of our law. What is it that we're grounding his right in? First and foremost, the Court can look to the Federal Rules of Evidence, Rule 706. But Rule 706 does not provide authorization or require the government to come up with experts to help your client prove his case. But it does set forth that an indigent civil litigant is entitled to an expert, and the Court can appoint an expert. And that's exactly what the petitioner in this case is. He's a civil litigant who's indigent, who's in need of an expert. The Federal Rules of Evidence, Rule 706, the plain language, and the use notes allow for that. The Sixth Amendment right to affect the system. Helen, in your view, could anyone come in and request or demand that the Court appoint an expert? Or is there some standard? The government points to the fact that the record in prison when he was in custody said he didn't have any mental impairments, and he, in fact, stated as much in his checklist form. So what do you think would be the standard? Or should this right that you would have us extend be available to any indigent prisoner? In staying within the facts of this case, when you have an appellate attorney, an experienced appellate attorney who's claiming during the appellate process and at the end of the appellate process when she is conferring with her client, it's clear that in her 20 years of experience, she has never seen She didn't identify an impairment. She just said he didn't understand the legal process. So in your view, is a declaration from a lawyer that the petitioner didn't understand or the defendant didn't understand the legal process, would that be sufficient? It would be sufficient. And that's why we're going back to the mental competency issue. It would be sufficient for a defense attorney or the government counsel to set forth and state, we have doubts as to this litigant's ability to understand or be competent to understand the proceedings. That would be sufficient to trigger a hearing on the issue. Wouldn't he at least have to submit something under oath to that effect? My understanding is there was never anything under oath or verified statement by your client that he was suffering from any sort of mental impairment. And I also understand from this record that you had both a magistrate judge and a district court judge looking at this and really quite sympathetic judges asking for your client to come forward with something, almost anything. And in this case, there was not only a statement or declaration from counsel under penalty of perjury, there was statements made by the consul general of the San Bernardino consulate of Mexico. There were, I think, pointing to the court, there's hundreds of letters that are being sent out. But that's another thing I wanted to ask you about. He managed somehow to send out these letters. I mean, doesn't that evidence some kind of intellectual capability? He was demanding help. He wasn't demanding specific help. In his letters, there was no indication that he even understood the legal processes, what a habeas petition meant, that there were filing deadlines, that there was a severe Miranda issue. All he said was, I need help. And he's sending it to everyone. And he's sending out a letter once every other day. Again, if he understood it, there would be letters that set forth that he actually understood exactly what he was asking for. It's not surprising that somebody would not understand the habeas rules. They're very, very confusing. They're plenty confusing even for lawyers. So that's not a surprise. But he's asking here for equitable tolling of filing deadlines established by Congress. And we have said that you have to come forward with some kind of evidence. Is there any evidence that he was not competent or there was some question about his competence during his State proceedings, either habeas or his initial trial? Was there an insanity defense? There was not an insanity defense. Is there any question about his competence to aid in the defense of his case? That was raised for the first time at the appellate process by his appellate attorney in the declaration. For some reason, she did not raise it in a habeas petition and asked just to be sent back to the court, the trial court. I'm noting that I'm out of time, but I'm willing to remain. Well, why don't we listen to the government attorney, and then if you will, I'll give you a minute or so for rebuttal, and we'll see what he has to say. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Deputy Attorney General Christopher Giesa on behalf of the Respondent. The process that exists for this is clear. Bills v. Clark provides that process, and it starts with an initial pleading burden. And that pleading burden requires something, some sort of good faith allegation of serious mental impairment. And the laws court, Laws v. Lamarck, points out some good examples of what that would entail, medical records. This defendant here could have easily obtained his prison medical file and submitted that if it provided any sort of help as to this idea that he suffered serious mental impairment. All inmates in the California prison system, upon entry at the various reception centers, are screened for mental health. And then beyond that, whenever an inmate wants to be evaluated further, they can self-report to have a further mental health evaluation done in the prison system. So it's not as though ---- So part of his argument is that he had a low IQ, and so not that he was necessarily mentally impaired. And would a low IQ be registered in some kind of prison medical records? I think to the extent that a low IQ might render a defendant unable to understand verbal commands, or be unable to conform to the rules of the prison, or be unable to adjust to the stresses of institutional life, I think to that extent that would be registered in a mental health screening. And so ultimately, it's not as though this defendant is without an ability to obtain medical records that would reflect upon his mental impairment if there is indeed anything of that nature. So we have a pleading burden. And that was simply not met here. And that's what the magistrate and the district court recognized at the outset. And as you pointed out, Judge Bybee, there were ample opportunities where the magistrate asked for it specifically and said, please provide me with something more. These were very sympathetic judges. I think I pointed that out. Yes, you did, Judge Wardlaw. So the opposing counsel realized most heavily on the statement by appellate counsel that in her practice experience, she had not run into a person who was less able to understand the legal process. Is that enough to trigger further examination? I don't think so, because what her representation was was a failure to a lack of legal sophistication, but it did not indicate mental impairment, serious mental impairment. And that's kind of the distinction, I think, is that in the Rasberry case, in Waldron Ramsey, this court has said that it's something more than just lack of legal sophistication or legal understanding. It means something that's really there that really hinders a person. He demonstrated his ability to communicate with the hundreds of letters that he sent out requesting help. And indeed, it wasn't as though these letters were incoherent. There was actually a response. The Mexican consulate ultimately responded to one of those letters and then provided assistance. So it's not as though he's lacking in the intellectual sophistication to be able to ask for help. What he's lacking is the legal sophistication to recognize there is a process called habeas corpus, and that's the remedy that he's after. And it's that that is a big difference from the kind of mental impairment that we're talking about. It's the lack of legal understanding and then also being able to file in a timely way. Had Mr. Salcedo-Contreras known that habeas is the mechanism, given the fact that he sent all of these letters, it is probably extraordinarily likely that he would have sent a letter, a habeas petition, to the district court along the way. But he didn't understand that, and that's really the critical issue. And so because of that, there's just simply no reason to overturn what the district court concluded in that there was equitable tolling was unavailable in this case. To the extent that Petitioner's asking for the procedures of 18 U.S.C. 4241 to apply, the Supreme Court has already foreclosed that. The Supreme Court has said that that statute does not apply in Federal habeas proceedings. And the reason for that is because, as Judge Bybee points out, habeas is a backwards looking kind of proceeding. And so the whole point of the 4241 scheme doesn't really apply. What about the Federal rule of evidence that was cited by opposing counsel 706? With respect to whether an indigent should be appointed experts, I don't think that that provides, I don't think that provides positive support either, because just the practicality of it would be extraordinarily burdensome if every indigent defendant, which is almost every single habeas Petitioner, were all of a sudden entitled to having an expert weigh in on things. I don't think that the Federal rules of evidence would. But there would have to be some standard, some showing required. Right. There would need to be some sort of showing. I would agree with that. But that showing certainly doesn't apply here. I mean, there would have to be, again, Bills v. Clark puts out the process, and that's that initial pleading burden. And once that initial pleading burden hurdle is overcome, then perhaps the appointment of experts and the rest of the process that Bills v. Clark talks about would be triggered, but not on this, not on these facts. And in conclusion, we would simply request that this Court affirm the district court's decision that equitable tolling does not apply in this case. Thank you. All right. Thank you, counsel. I'll give you a minute or so to respond. The Court was asking, was there a signed declaration by the defendant, or the Petitioner, as well as the Attorney General asking for medical records? Presumption, the assumption in those requests, though, is that there's a self-awareness by someone who's mentally ill that they are mentally ill and they're willing to do so. But what we do have in this case is a verified petition that was filed, signed by the defendant, in which these claims of mental illness and mental impairment were made. And I think that is sufficient based upon the requests of counsel. What is problematic for the Petitioner here is that the district court is indicating and the Respondent is indicating that medical records are needed. They're not allowing this Petitioner the opportunity to develop that factual record. And that's one of the requests that were made. He was given many opportunities to do this. Both the magistrate and the district court issued order after order saying, provide us with the letters, provide us with something. But, again, they did provide declaration of appellate counsel. They did provide declarations from the counsel general. There was letters from his sister indicating that he wasn't, he didn't, had no proficiency in English, barely any understanding of Spanish. Well, the lack of proficiency in Spanish seems to be belied by the record when he writes hundreds of letters. I mean, I was very surprised that somebody was pushing that when we also know that he was writing, as you said, writing letters every other day. That doesn't sound like a lack of proficiency. And they were responded to. The Mexican consulate came forward and offered its assistance. So, obviously, they understood what he said. Again, they understood what he said, but I'm not, I don't think it's, I don't think there's an expectation that he's setting forth elaborate prose in these letters that are, you know, showing, you know, strong mental abilities. I, it is, I think that the best thing for this court to do is to remand this case to develop this record and allow him the opportunity to present an expert to show that there are medical records developed at the case, which is clearly allowed. An expert at the government's expense? At the court's expense, at the government's expense, yes. And I, that's set forth generally. The Seventh Circuit in Schmidt says the petitioner should have allowed the resources developed that this record as to mental impairment. Aside from the Seventh Circuit's decision, are you aware of any other court that has ever ordered development of a record in a case of equitable tolling like this? There wasn't. It was almost the presumption in the Calderon-Kelly out of this court that the district court acted properly by appointing a doctor to evaluate the petitioner for mental competency. In Calderon, was that an equitable tolling case? It was, as was the Laws v. Lamarque case. The district court of Oregon appointed a doctor to determine whether the petitioner was mentally competent. So these procedures have been undertaken by district courts and affirmed by this court in doing so. It just hasn't been established in the law that says this is appropriate to do so. And I think that's why the district court in this case probably didn't appoint an expert and didn't think. But we've set forth under the Federal Rules of Evidence, even under the effective assistance of counsel under the Sixth Amendment for habeas counsel, they need appropriate services and resources in order to establish. And, you know, and that's primarily done in death penalty cases, but still I think it's appropriate and it's something the court should consider. All right. Thank you very much, counsel. Thank you very much. The State of Contrast v. Spearman will be submitted.
judges: Wardlaw, Bybee, Ikuta